## Tom Clark Chevrolet Inc. v. Board of Property Assessment Appeals & Review

C.P. of Allegheny County, no. GD 99-22270.

*Mark F. Haak,* for plaintiff.
*Ronald Zera,* for defendant school district.
*Falco A. Muscante,* for defendant city.

*Robert Reith,* for defendant county.

FRIEDMAN *J.,* April 10, 2002—The instant case came before the court as a non-jury trial, ordered by the administrative judge of civil division, upon the recommendation of the special masters originally assigned to hear plaintiff's assessment appeal. The central issue is whether or not the assessed value of certain real estate owned by Tom Clark Chevrolet (plaintiff), as determined by the Board of Property Assessment Appeals and Review, was also, as the parties agree it should have been, based on the property's fair market value. The board's position was defended by the three taxing bodies directly affected, the City and School District of McKeesport and the County of Allegheny (defendants).

The plaintiff's evidence regarding fair market value consisted of the testimony of three witnesses, the plaintiff's sole owner, Tom Clark, one of its employees, Timothy Seale, and an expert in real estate appraisals, William Rielly Jr. The defendants presented no evidence, resting instead on the legal presumption of the accuracy of the county tax blotter and contending that plaintiff did not rebut that presumption.

After full consideration of all the evidence and the arguments of counsel, the court concludes that the presumption of accuracy was clearly rebutted and, further, determines that the fair market value of the subject property is no more than $565,000 for each of the years at issue, 1999-2002. It is believed that the parties were content to have one value suffice for all four tax years, although if this understanding is incorrect, the court is prepared, based on the evidence available to it, to make additional calculations for each tax year.

The testimony of Mr. Clark, the majority owner and an officer of plaintiff, clearly established that a drainage canal across the road from the subject real estate began flooding the property in 1996, six or seven years after he purchased it, and continues to do so on a regular basis, causing extensive damage and making insurance difficult to obtain.[1] Mr. Clark and Mr. Seale's testimony is credible and uncontroverted. The court finds that, until the flooding problem is corrected, an eventuality that is not on the horizon, plaintiff will be unable to sell its real estate for enough even to recover its investment in the land and building. Whatever the fair market value of the real estate would be without the flooding and in a more prosperous area, it has been severely reduced by those conditions at least since 1996.

The report of the plaintiff's expert is extremely thorough and his testimony was highly credible. The defendants presented two flawed arguments in support of the presumption of validity upon which they rely: first, the school district argued that the value of the plaintiff's business is the measure of the fair market value of the land, and used the taxable earnings of the business as a basis for its calculations; second, the city argued that the unadjusted sale prices of similar land in other parts of the county were comparable even though the undisputed evidence showed that those parcels were in much more prosperous and expensive areas, while the subject parcel is in an area of values that are depressed if not in fact

---

1. According to the uncontroverted testimony of Mr. Seale, despite the regular flooding, this is of man-made (actually, government-made) origins and does not make plaintiff eligible for flood-related business interruption or other insurance programs.

distressed. The county itself took no position beyond adopting the arguments of the city and school district.

As to the school district's position, it is clearly mistaken to say that the income approach to real estate evaluation, which starts with the rental value of the property, should instead be coextensive with the gross income of whatever business happens to be on the property. Even the net income of a business is of little use in determining the fair rental value of the real estate on which it sits. The uncontroverted testimony indicates that the income approach applies only to *investment* properties, *i.e.,* real estate that is purchased for the purpose of renting it to others. Car dealerships are generally located on real estate owned by the dealership or its principals, so that rent is not a particularly reliable way to determine value. Moreover, if one wishes to use the income approach in valuing real estate, the correct income to use is the fair rental value that the *real estate* would command, not the income to the *business* that is on the real estate. If, as here, the owner of the real estate does not lease it to others, so that the real estate generates no rents, then the income approach to valuation must be based on hypothetical rents and expenses (which are referred to in the testimony as pro forma). Whether the business located on the land earns gross revenues of millions of dollars or nothing is, alone, of little use in determining what the fair rental value should be where no rent is paid.

As to the city's position, that a car dealership's real estate in a prosperous neighborhood is comparable to such real estate in a poorer area, that argument, too, is flawed. The comparable sales approach to real estate must be based on sales of real estate that are comparable. The

uncontroverted testimony of the plaintiff's expert was not only credible, it is almost axiomatic: land in a thriving neighborhood is more desirable and costly than land in a neighborhood that is less than prosperous. Plaintiff's expert's testimony that he reduced the sales prices of land used for car dealerships in Moon, McCandless and West Mifflin to make them comparable to the land at issue, is credible and reasonable. Based on his extensive experience and considering the uncorrected flood problem affecting the site, he chose a factor of 70 percent. Although defendants could have presented their own experts to contradict this, they did not. The fact that defendants give as a reason for not hiring an expert the poverty of the McKeesport area is further evidence of the difference between it and Moon, McCandless or West Mifflin.

The court finds that plaintiff's expert was eminently qualified in the area of real estate evaluation. It also finds that he was highly credible. His testimony established that the assessed value that has been placed on this real estate is excessively high, given both its location and the uncorrected flooding problem.

## CONCLUSION

The plaintiff has met its burden of rebutting the presumption of validity of the assessed values of the subject real estate for the years 1999-2002. The assessed values are therefore set as follows for the years indicated:

| | |
|---|---|
| 1999 (20.3% ratio) | $114,695 |
| 2000 (19.8% ratio) | $111,870 |
| 2001 (1.00% fmv) | $565,000 |
| 2002 (100% fmv) | $565,000 |

See verdict slip filed separately. [not published here]